UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TORRY SMITH, *et al.*,

    Plaintiffs,

    v.

CITY OF OAKLAND, *et al.*,

    Defendants.
_____/

No. C-05-4045 EMC

**FINAL PRETRIAL CONFERENCE ORDER**

    A Final Pretrial Conference was held in this matter on November 14, 2007. Pursuant to Federal Rule of Civil Procedure 16(e), this order memorializes the rulings made and stipulations entered into on that day.

## I.    TRIAL DATE & LENGTH OF TRIAL

    A.    Jury selection shall be held on November, 20, 2007, at 9:30 a.m.

    B.    The trial shall begin on November 26, 2007, at 8:30 a.m. (Counsel, however, should be present before the Court at 8:00 a.m.) Trial days shall be Monday through Friday, from 8:30 a.m. to 4:30 p.m., for a total of four court days.

    C.    Plaintiffs shall have twelve hours to present their evidence, and Defendants eight hours. This includes direct examination by one side of its witnesses, cross-examination by that side of the opposing party's witnesses, and any rebuttal. This does not include opening statements and closing arguments (the Court will impose separate limits), nor does this include jury selection and instructions.

    D.    The only claims proceeding to trial are as follows: (1) violation of § 1983 (the Fourth Amendment), (2) false arrest and imprisonment, (3) violation of California Civil Code § 52.1, and

(4) intentional infliction of emotional distress. All claims are asserted by both Plaintiffs. The City of Oakland is subject to liability only through respondeat superior on state law claims.

## II.   PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A. No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness. If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections. The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

B. With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by November 19, 2007. If any such exhibits are still objected to, both counsel shall notify the Court by 4:00 p.m., November 21, 2007, and shall identify the exhibits at issue and the objections. Counsel should notify the Court via e-filing *and* via fax at (415) 522-4200. The Court will then address the dispute on the first day of trial, *i.e.*, on November 26, 2007, before any testimony begins.

C. If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day. The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

## III.   PROCEDURE FOR WITNESSES AT/DURING TRIAL

A. Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness. At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case. No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal) unless otherwise ordered by the Court.

B. Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order. Counsel should give opposing counsel reasonable notice (at least one day) with respect to which witnesses will be testifying on a

particular day. Witnesses may be taken out of order if necessary. Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

    C.    Only one lawyer for each party may examine any single witness.

    D.    If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the court reconvenes. If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

    E.    Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court. The Court may read to the jury such undisputed facts at appropriate points in the trial.

    F.    Immediately before each new witness takes the stand, counsel calling the witness shall place on the witness stand a clearly marked copy of each exhibit that counsel expects to have the witness refer to during his or her direct examination. Immediately before beginning cross-examination, counsel conducting cross-examination shall do the same with any additional exhibits to be referenced on cross.

    G.    If counsel intends to have the witness draw diagrams or put markings on visual exhibits or diagrams prepared by the party calling the witness, the witness shall do so before taking the stand. Once on the stand, the witness shall adopt the diagrams and/or markings and explain what they represent. If the diagram or visual exhibit is prepared by the opposing party, the witness shall not make any markings on the diagram or visual exhibit without leave of the Court.

### IV.    OTHER PROCEDURES AT/DURING TRIAL

    A.    To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant). There shall be no speaking objections or argument from either counsel unless requested by the Court. Only one counsel may make objections for each witness.

    B.    Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances. Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*. Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

### V. PLAINTIFFS' MOTIONS IN LIMINE

A.  Plaintiffs' Motion in Limine No. 1 (Docket No. 61)

In their first motion, Plaintiffs ask the Court to exclude evidence of Mr. Smith's tax returns prepared by Jackson Hewitt Tax Service. Defendants contend that they should be allowed to cross-examine Mr. Smith about the tax returns because he lied about having a son and daughter in those tax returns.

The Court **DENIES** the motion. "Evidence that a witness has made false statements in a tax return is obviously a matter which affects the witness's credibility." *Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir. 1993). Under Federal Rule of Evidence 608(b), "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence," but may, "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Consistent with Rule 608(b), Defendants may cross-examine Mr. Smith about the tax returns but may not introduce extrinsic evidence related to such. Because of the limited nature of the cross-examination, the evidence is not unfairly prejudicial to Plaintiffs.

B.  Plaintiffs' Motion in Limine No. 2 (Docket No. 61)

In their second motion, Plaintiffs ask the Court to exclude evidence of Mr. Smith's alleged criminal activity and parole compliance following the date of his release from custody (*i.e.*, January 20, 2005). The Court **GRANTS** the motion, so long as Mr. Smith only testifies about his activity and parole compliance up to the date of his release from custody.

C.  Plaintiffs' Motion in Limine No. 3 (Docket No. 61)

In their final motion, Plaintiffs ask the Court to exclude evidence of the underlying conviction for which Mr. Smith was on parole at the time of the incident (*i.e.*, armed robbery). According to Defendants, they should be allowed to testify about the underlying conviction because "how they approach the home of a parolee for armed robbery would be different than how they might approach the home of someone on parole for a lesser crime or one not involving a weapon." Opp'n at 5.

The Court **GRANTS** Plaintiffs' motion. The Court is dubious that evidence of the underlying conviction has any relevance. Defendants' knowledge, even if established, of the nature of the prior conviction has little to do with whether or not they planted the rifle, which is the central issue in this case. Plaintiffs are asserting claims for unreasonable search and seizure, not excessive force -- a claim to what Defendants' knowledge of the prior conviction would plausibly be relevant as that would affect whether the officers should have, *e.g.*, approached with guns drawn or used force. Those issues are not present here. The Court thus concludes that evidence of the underlying conviction is not relevant or has at best marginal relevance.

The Court further concludes that any relevance that the evidence has is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. If the evidence were admitted, then a jury likely would believe that Mr. Smith did in fact have a gun on the premises, as Defendants contend, because he had previously been convicted of armed robbery, even though this conviction occurred five years before the incident at issue. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

## VI.  DEFENDANTS' MOTIONS IN LIMINE

A.  Defendants' Motion in Limine No. 1 (Docket No. 65)

In their first motion, Defendants ask the Court to exclude the testimony of Plaintiffs' expert Peter Barnett. *See also* Pls.' Proposed Ex. 17 (Barnett report). Mr. Barnett was retained by Plaintiffs to examine the rifle allegedly possessed by Mr. Smith for fingerprints. *See* Lee Decl., Ex. A (Barnett report, dated 9/8/06). In his report, Mr. Barnett stated that, based on his examination, he did not see any visible fingerprint impressions. He further stated that it appeared that the rifle had previously been examined for fingerprints. Mr. Barnett therefore contacted the Oakland Police Department and was informed that certain testing had been done and that, after the testing, the rifle had been wiped down with acetone. According to Mr. Barnett, this

> final processing with acetone would effectively remove essentially all traces of any latent prints, developed or not, on the carbine. The use of this final step is inexplicable and, based on the procedures followed in my laboratory and in other forensic laboratories where I have inquired, not a usual procedure in those laboratories. The purpose of

5

> the acetone wipe is, presumably, a safety measure to remove potentially harmful chemical traces, but the procedure effectively eliminates the possibility of further processing or review of the work done in the Oakland Police laboratory.

*Id.* According to Plaintiffs, Mr. Barnett will provide testimony about his report as well as, *inter alia*, his examination of the rifle, procedures for testing firearms for the presence of fingerprints, methods of preservation of firearms for fingerprint testing, and review of Oakland Police Department records and procedures of storing and testing evidence for the presence of fingerprints (both generally and specifically with respect to the instant case).

The Court **DENIES** the motion. First, Mr. Barnett's testimony will assist the trier of fact with respect to the issue of spoliation. Second, Mr. Barnett's testimony will assist the trier of fact in understanding the significance of the Oakland Police Department's fingerprinting test results.

Under Ninth Circuit law, a court has the inherent discretionary power to issue an evidentiary sanction in response to the destruction or spoliation of relevant evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). A party's destruction of evidence need not be in bad faith in order to warrant a sanction. *See id.* In the instant case, the sanction sought by Plaintiffs is twofold: (1) testimony by Mr. Barnett about the destruction of evidence and (2) an instruction permitting the jury to draw an adverse inference from the destruction against Defendants.

Although the Court is inclined to find that there is sufficient evidence to allow the jury to hear evidence on spoliation, it is not clear what prejudice Plaintiffs suffered as a result of their not being able to conduct their own testing of the rifle, given that Mr. Camacho already found that there were no fingerprints, a result which benefits Plaintiffs. The Court reserves ruling on Plaintiffs' request for sanctions pending further hearing.

B.  <u>Defendants' Motion in Limine No. 2 (Docket No. 66)</u>

In their second motion, Defendants ask the Court to exclude the testimony of Plaintiffs' expert Roger Clark. *See also* Pls.' Proposed Ex. 16. Defendants argue that his testimony should be excluded because he will express opinions about the credibility of the officers, which is improper; because his opinions constitute legal conclusions; and because his testimony is not relevant. The motion is **GRANTED** in part and **DENIED** in part. Mr. Clark shall not be allowed to opine on the

6

1  credibility of the officers or make conclusions about whether the search and arrest were legal.  Mr.
2  Clark does not have any specialized knowledge that would assist the jury in assessing credibility or
3  in determining whether the search and arrest were legal.

4  However, Mr. Clark may opine about the alleged failure of the officers to follow standard
5  procedures -- *e.g.*, their failure to arrest Marcus Belton and Juanita Walton, their failure to keep Mr.
6  Smith's bankcard, and their failure to include the alleged confession by Mr. Smith in the police
7  report.  For instance, the jury could infer from the first two failures that the officers went to Mr.
8  Smith's residence with the purpose of harassing him rather than for a legitimate law enforcement
9  purpose; they could infer from the last failure that the officers lied about the confession.  The Court
10 notes that, in so ruling, it does not bar Defendants from making objections to specific instances in
11 which the officers allegedly failed to follow standard procedures if such failures are trivial or have
12 little probative value.  *See, e.g.*, Fed. R. Evid. 402, 403, 404(a).

13 C.    Defendants' Motion in Limine No. 3 (Docket No. 67)

14 In their third motion, Defendants move to exclude the testimony of Wayne Meddows and
15 Fred Abraham.  Plaintiffs intend to offer Mr. Meddows to testify about Mr. Smith's employment at
16 Home Depot following his release from custody on January 20, 2005.  *See* Joint Pretrial Statement at
17 5.  Plaintiffs intend to offer Mr. Abraham to testify about Mr. Smith's employment at Pep Boys prior
18 to the arrest and incarceration at issue.  *See id.*  Defendants contend that the testimony of both
19 individuals should be excluded because Plaintiffs failed to disclose them as witnesses until October
20 23, 2007, when Plaintiffs provided their draft of the joint pretrial statement.  *See* Fed. R. Civ. P.
21 37(c)(1).  Plaintiffs argue that they should not be barred from offering the two individuals as
22 witnesses because Defendants were aware of the witnesses' identities as of April 2006, when Mr.
23 Smith was deposed.

24 The Court **GRANTS** the motion.  There is no dispute that Mr. Smith referred to Mr.
25 Meddows and Mr. Abraham (and Home Depot and Pep Boys, respectively) during his April 2006
26 deposition.  The issue here is whether Mr. Smith's reference to these individuals during the
27 deposition was enough to put Defendants on fair notice of their being witnesses.
28

7

Plaintiffs' position does find some support in Rule 26(e). The 1993 advisory committee notes for Rule 26(e) expressly state that "[t]here is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition . . . ." Fed. R. Civ. P. 26(e), 1993 advisory committee notes. However, neither the rule nor the advisory committee notes support the proposition that the mere mention of a person's name during a party's deposition is enough to alert the deposing party that the person is a witness. As a matter of fairness, there should be some indication as to why that person is someone "likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A). *See, e.g.*, *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004) (concluding that district court did not err in failing to strike affidavit of witness where witness was identified in 30(b)(6) deposition as having relevant information); *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, Nos. 00 C 5658, 00 C 7086, 2003 U.S. Dist. LEXIS 7207, at *24 (N.D. Ill. Apr. 30, 2003) (noting that, "[d]uring her deposition, Claire Allen identified Crane as a person who may have knowledge of Old Intercounty's real estate closing procedures"). In the instant case, there is little in the deposition testimony that indicates that Mr. Meddows and Mr. Abraham are likely to have discoverable information; their names came up largely in the context of defense counsel asking general background information.

Although the Court shall not permit Mr. Meddows and Mr. Abraham to testify as witnesses, the Court shall not award Defendants fees based on Plaintiffs' failure to disclose. Plaintiffs' failure to disclose was not entirely unreasonable in light of the text of Rule 26(e) and the advisory committee notes.

D.  Defendants' Motion in Limine No. 4 (Docket No. 68)

In their fourth motion, Defendants ask the Court to exclude evidence of the dismissal of the criminal charges against Mr. Smith. *See, e.g.*, Pls.' Proposed Exs. 9-10, 18. Defendants contend that the dismissal of the criminal charges is irrelevant to the issues of whether Defendants' searched Plaintiffs' home for legitimate law enforcement reasons and whether there was probable cause to arrest Mr. Smith. Defendants further argue that, even if relevant, the evidence would be unfairly prejudicial and confusing as "[a] jury may well improperly conclude[] that the dismissal of the

criminal charges means that the search of plaintiffs' residence and/or arrest of plaintiff Torry Smith was unconstitutional or improper in some other way." Mot. at 4.

Plaintiffs do not dispute that the dismissal of the criminal charges is irrelevant to the issues of whether Defendants' searched Plaintiffs' home for legitimate law enforcement reasons and whether there was probable cause to arrest Mr. Smith.[1] *See also* Opp'n at 9 (stating that Plaintiffs have no intention of using the dismissal to prove that the criminal charges were false). Plaintiffs argue, however, that the dismissal is relevant impeachment evidence and that any prejudice can be diminished by a limiting instruction as to how the jury may consider the evidence.

The Court **DENIES** the motion. Evidence of the dismissals is relevant to Officer Parkinson's motive and the truthfulness of his testimony. That is, Officer Parkinson's failure to mention the alleged confession until the parole revocation hearing is arguably even more suspect once it is known that, at the time of the parole hearing, the criminal charges had already been dismissed twice despite his testimony in one of the earlier hearings. A jury could infer Officer Parkinson was especially willing to do anything to make sure that Mr. Smith stayed behind bars. However, to reduce the danger of unfair prejudice, the Court shall, at Defendants' request, issue a limiting instruction as to how the evidence of the dismissals may or may not be considered. The

---

[1] And even if they did, as Defendants point out, that position would be foreclosed by *Anda v. City of Long Beach*, 7 F.3d 1418 (9th Cir. 1993). In *Anda*, the plaintiff had been arrested on a charge of assault with a deadly weapon but subsequently the criminal charges against him were dismissed at a preliminary hearing pursuant to California Penal Code § 871. *See id.* at 1420. Under § 871, a criminal complaint is to be dismissed if it appears that no public offense has been committed or there is not sufficient cause to believe that the criminal defendant is guilty of a public offense. *See id.* at 1420 & n.2. The district court held that, while the testimony at the preliminary hearing could be used for impeachment purposes, evidence of the dismissal itself was not admissible because it was not relevant. *See id.* at 1420, 1422.

On appeal, the plaintiff argued, *inter alia*, that the district court had erred in excluding evidence that the state court had dismissed his criminal charges at the preliminary hearing. *See id.* at 1421. The Ninth Circuit upheld the decision of the lower court. It explained that, to be relevant, the dismissal of the criminal charges had to "make the issue of the existence of probable cause [for the arrest] more or less likely." *Id.* at 1422. Although, under § 871, criminal charges may be dismissed for lack of sufficient cause, "a dismissal under this provision is not necessarily relevant to the existence of probable cause. A preliminary hearing is a *post facto* determination of probable cause that is concerned primarily with whether the prosecution meets its burden of proof and, at least in some instances, can result in a dismissal of criminal charges even though the existence of probable cause is not considered." *Id.* In the plaintiff's case, the dismissal was not due to a lack of probable cause; rather, the charges were dismissed on procedural grounds, *i.e.*, because certain witnesses and physical evidence were unavailable on the day of the preliminary hearing. *See id.* at 1422-23.

1 parties shall meet and confer to determine whether they can reach agreement on an appropriate
2 limiting instruction. They shall submit a proposed limiting instruction (or instructions if no
3 agreement is reached) no later than November 20, 2007. Furthermore, the dismissals of the criminal
4 charges shall be elicited through the examination of Officer Parkinson, not Torry Smith.

E. <u>Defendants' Motion in Limine No. 5 (Docket No. 69)</u>

In their fifth motion, Defendants move to exclude all evidence concerning Mr. Smith's parole revocation hearing, including the transcript of the hearing, the disposition report, and the result. *See, e.g.*, Pls.' Proposed Ex. 11. The motion is **GRANTED** in part and **DENIED** in part. The disposition report and the result are both excluded. So too is that part of the hearing transcript which contains the hearing officer's conclusions. Plaintiffs' sole contention is that this evidence is relevant to impeachment of Officer Midyett, but this argument is not persuasive. Officer Midyett, unlike Officer Parkinson, did not testify at the parole revocation hearing. Plaintiffs can adequately challenge Officer Midyett's credibility simply by asking why he never mentioned the alleged confession until his deposition in this case.

As to the remainder of the hearing transcript, Plaintiffs may use excerpts to impeach. Defendants argue that the transcript is unreliable because the hearing was only tape recorded and parts of the hearing were not intelligible, but that should not bar the use of any relevant, nonhearsay testimony that was intelligible. Defendants have failed to point to any part of the transcript prepared by Plaintiffs that is inaccurate or misleading.

Moreover, testimony by Officer Parkinson at the parole revocation hearing can be used by Plaintiffs for the truth of the matter asserted because an admission by a party-opponent is not considered hearsay. *See* Fed. R. Evid. 801(d)(2) (providing that an admission by a party-opponent is not hearsay). However, with respect to testimony by Mr. Smith or Ms. Gray at the parole revocation hearing, the Court will have to reserve judgment. Presumably, Plaintiffs will be offering their own prior *consistent* statements from the parole revocation hearing. But, under Federal Rule of Evidence 801(d)(1)(B), a prior consistent statement is admissible only if, *inter alia*, offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive. *See* Fed. R. Evid. 801(d)(1)(B).

1    Plaintiffs contend still that, at the very least, they should be permitted to introduce excerpts
2 of the tape containing statements by Mr. Smith at the hearing, made in reaction to Officer
3 Parkinson's assertion of the confession. According to Plaintiffs, Mr. Smith's reaction is not hearsay
4 because it is a present sense impression or an excited utterance.

5    The Court reserves ruling on this aspect. Plaintiffs have presented no authority applying this
6 exception to hearsay where the alleged present sense impression or excited utterance relates to a
7 event or condition objectively observable rather than a statement the declarant perceives as
8 untruthful.

9 F.    Defendants' Motion in Limine No. 6 (Docket No. 53)

10    In their sixth motion, Defendants ask the Court to exclude evidence of any prior criminal
11 charges against Defendant Officer Midyett. Plaintiffs do not oppose the motion, although they
12 "reserve the right to introduce such evidence should Defendants somehow open the door to such
13 evidence." Opp'n at 11. The Court therefore **GRANTS** the motion, although it will not bar
14 Plaintiffs from moving to introduce the evidence if Defendants "open the door to such evidence."
15 *Id.*

16 G.    Defendants' Motion in Limine No. 7 (Docket No. 70)

17    In their seventh motion, Defendants move the Court to exclude all evidence regarding the
18 purported reputation of Officer Parkinson and/or Officer Midyett – in particular, testimony by Mr.
19 Smith that the officers are "notorious in the streets." Plaintiffs do not oppose the motion, although
20 they "reserve the right to introduce such evidence should Defendants somehow open the door to
21 such evidence." Opp'n at 12. The Court therefore **GRANTS** the motion, although it will not bar
22 Plaintiffs from moving to introduce the evidence if Defendants "open the door to such evidence."
23 *Id.*

24 H.    Defendants' Motion in Limine No.8 (Docket No. 54)

25    In their eighth motion, Defendants move the Court to exclude any evidence related to the
26 Internal Affairs, Citizen Police Review Board, and personnel histories of the officers who responded
27 to the scene of the incident at issue. Plaintiffs do not oppose the motion, although they reserve the
28 right to introduce such evidence if "Defendants should open the door to such evidence." *Id.* The

Court therefore **GRANTS** the motion, although it will not bar Plaintiffs from moving to introduce the evidence if Defendants "open the door to such evidence." *Id.*

I.     Defendants' Motion in Limine No. 9 (Docket No. 71)

In their ninth motion, Defendants move to exclude any evidence related to the "Nightriders" case. Plaintiffs do not oppose the motion, although they reserve the right to introduce such evidence if "Defendants somehow open the door to such evidence." *Id.* The Court therefore **GRANTS** the motion, although it will not bar Plaintiffs from moving to introduce the evidence if Defendants "open the door to such evidence." *Id.*

J.     Defendants' Motion in Limine No. 10 (Docket No. 79)

In their tenth motion, Defendants ask the Court to exclude any evidence of their failure to contact Mr. Smith's parole agent prior to going to the residence. Defendants argue that the evidence "is completely irrelevant because there *is* no requirement to contact a parole agent before conducting a search." Mot. at 2 (emphasis in original).

The motion is **DENIED**. Plaintiffs represented at the hearing that Mr. Smith's parole agent will testify that it is common for an officer(s) to contact a parole agent prior to conducting a parole search. If so, then Defendants' failure to do so in the instant case is probative to the issue of whether they went to Mr. Smith's residence with a purpose to harass rather than in earnest. The Court will not issue a limiting instruction to inform the jury that there is no legal requirement that an officer(s) contact a parole agent prior to doing a parole search, because Defendants may testify that they are not legally required to do so, and Plaintiffs have represented that they will not offer any evidence to the contrary. To the extent that fact is considered relevant by the jury, they will be made aware of it.

K.     Defendants' Motion in Limine No. 11 (Docket No. 79)

In their final motion, Defendants move the Court to exclude evidence of their alleged statement to Mr. Smith that there was a warrant out for his arrest when in fact there was no such warrant.

The motion is **DENIED**. The course of Defendants' conduct and their intent is at issue. Whether they made alleged false statements to Mr. Smith may be probative to their intent. The Court will not issue a limiting instruction to inform the jury that an officer(s) may use guise or

pretext when interrogating a suspect because Defendants may testify to such and Plaintiffs have not indicated that they offer any evidence to the contrary.

### VII.  WITNESSES

A.  Plaintiffs

For their case-in-chief, Plaintiff intends to call or may call, if the need arises, the following witnesses.

    1.  Torry Smith.
    2.  Patricia Gray.
    3.  Tommie Smith.
    4.  Terry Johnson.
    5.  Roger Clark.
    6.  Peter Barnett.

B.  Defendants

For their case-in-chief, Defendants intend to call or may call, if the need arises, the following witnesses.

    1.  John Parkinson.
    2.  Marcus Midyett.
    3.  Michael Wells.
    4.  Gregg Williams.
    5.  Gus Galindo.

C.  Deposition Testimony

The parties have agreed to introduce the testimony of Tommie Smith by videotaped deposition in the event he is unavailable for trial. *See* Joint Pretrial Statement at 6. Because Tommie Smith may be unavailable such that the parties would, as a result, be compelled to rely on his deposition testimony, the parties should meet and confer to determine which segments they will designate. The parties should also meet and confer to determine which objections need to be ruled upon by the Court and provide that to the Court by November 20, 2007 so the Court may rule on those objections in time to allow for proper editing of the videotape.

### VIII. WRITTEN DISCOVERY RESPONSES & EXHIBITS

A. Written Discovery Responses

Plaintiffs wish to present the City of Oakland's responses to Plaintiffs' document requests (set two) as an exhibit. *See* Joint Pretrial Statement at 6.

B. Exhibits

Attached is the Court's ruling on the parties' objections to exhibits (Attachment A).

### IX. DEMONSTRATIVES

The parties shall meet and confer in advance (prior to the date of demonstration) and exchange demonstratives to avoid objections. Any objections shall be brought to the Court's attention before 4:00 p.m. the day prior to being exhibited.

### X. JURY QUESTIONNAIRE, JURY VOIR DIRE, JURY INSTRUCTIONS & VERDICT FORM

A. Short Statement to Potential Jurors

The Court shall read to the potential jurors a short statement about the case prior to voir dire. The parties shall provide a stipulated statement (one or two paragraphs) to the Court by 12:00 p.m., November 19, 2007.

B. Jury Questionnaire and Voir Dire

The Court shall not use a jury questionnaire but shall voir dire the potential jurors (taking into account the proposed voir dire submitted by the parties). The Court has already described in its last Case Management Conference order the list of standard questions it intends to ask. The Court shall also give each party a brief opportunity (twenty minutes each) to voir dire the potential jurors after questioning by the Court.

///
///
///
///
///
///

C. <u>Jury Instructions</u>

The Court shall address jury instructions at a later time.

D. <u>Verdict Form</u>

The Court shall address the verdict form at a later time.

This ruling disposes of Docket Nos. 61, 65, 66, 67, 68, 69, 53, 70, 54, 71, and 79.

IT IS SO ORDERED.

Dated: November 16, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge